

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-20-00280-CV

———————————————

IN RE KILLICK AEROSPACE LIMITED AND KILLICK AEROSPACE, LLC

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-315925-20

Before Sudderth, C.J.; Kerr and Womack, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

In this mandamus proceeding, relators Killick Aerospace Limited and Killick Aerospace, LLC (collectively, the Killick Parties) ask us to direct the trial court to vacate its order denying their motion to dismiss the claims brought against them by real parties in interest Bombardier Inc. and Learjet, Inc. Because the trial court clearly abused its discretion and because the Killick Parties lack an adequate remedy by appeal, we conditionally grant mandamus relief and order the trial court to vacate its order denying the Killick Parties' motion to dismiss, and we direct the trial court to enter an order dismissing Bombardier and Learjet's claims against the Killick Parties.

### Background

This case involves employees leaving their employer for a competitor and allegedly taking confidential information and trade secrets with them. As alleged, William Molloy, Stefan O'Hare, Kiril Jakimovski, and Jason Lehew (collectively, the Individual Defendants) were employed by Bombardier and were instrumental in developing Bombardier's business-aircraft-teardown division. Around March 2019, the Individual Defendants developed a business plan that contemplated leaving Bombardier to conduct a business-aircraft-teardown division for a competitor. As alleged, the Individual Defendants later began contacting Bombardier's competitors, including the Killick Parties, regarding their business plan.

Around this time, Killick Limited entered into two distribution agreements with Learjet, a company owned and controlled by Bombardier. Those distribution

2

agreements called for Killick Limited to be the exclusive distributor of certain Learjet/Bombardier aircraft parts. Through those distribution agreements, Killick Limited was granted the right to possess and use certain of Bombardier's confidential information and trade secrets, although Killick Limited's use of Bombardier's confidential information and trade secrets was limited "solely" for the purposes of performing Killick Limited's contractual obligations.

Toward the end of 2019 and the beginning of 2020, the Individual Defendants left their employment at Bombardier and began working for the Killick Parties. As alleged, the Individual Defendants took Bombardier's confidential information and trade secrets with them when they left their employment with Bombardier.

Bombardier and Learjet later filed a lawsuit against the Killick Parties and the Individual Defendants. In the original petition, Bombardier[1] brought claims against the Killick Parties for: (1) misappropriation of its confidential and proprietary information; (2) violation of the Texas Uniform Trade Secrets Act; and (3) breach of the distribution agreements.[2] Bombardier also sought injunctive relief to prohibit the

---

[1]Although the original petition was filed by both Bombardier and Learjet, all the claims in the lawsuit appear to be brought on behalf of Bombardier (i.e., Bombardier, not Learjet, is mentioned as the party who was damaged for each of the claims, and Bombardier, not Learjet, is the party praying for relief).

[2]Bombardier alleged the following claims against the Individual Defendants: (1) misappropriation of its confidential and proprietary information; (2) violation of the Texas Uniform Trade Secrets Act; (3) breach of the duty of loyalty; (4) conversion; and (5) theft.

Killick Parties "from any use of Bombardier's trade secrets and confidential and proprietary information and know-how" and sought the return of "all of Bombardier's tangible trade secrets and confidential and proprietary information in [the Killick Parties'] possession, custody, or control."

The Killick Parties filed a motion to dismiss the claims brought against them based on a forum-selection clause contained in the distribution agreements entered between Killick Limited and Learjet. That forum-selection clause—which is identical for each of the two distribution agreements—provides:

> [Killick Limited] and Learjet each irrevocably agree to submit any action, suit or proceeding arising out of, or connected with, this Agreement to the courts of the State of Kansas, which shall have exclusive jurisdiction to adjudicate any such action, suit or proceeding.

Bombardier and Learjet then amended their petition. In the amended petition, they removed Bombardier's breach of contract claim relating to the distribution agreements and deleted certain paragraphs and references to the breaches of the distribution agreements. In the amended petition, Bombardier still brought claims against the Killick Parties for misappropriation of its confidential and proprietary information and for violation of the Texas Uniform Trade Secrets Act, and it still sought injunctive relief relating to the Killick Parties' possession and use of its trade secrets and confidential and proprietary information.[3]

---

[3]As with the original petition, the amended petition was filed by both Bombardier and Learjet, but all the claims in the amended petition appear to be brought on behalf of Bombardier (i.e., Bombardier, not Learjet, is mentioned as the

4

An affidavit made by Bombardier's vice president was attached to the amended petition. That affidavit referenced the distribution agreements and mentioned that the distribution agreements "would necessarily expose [the Killick Parties] to certain Bombardier business aircraft trade secrets, confidential and proprietary information, and know how." Excerpts of the distribution agreements were attached to the affidavit. Those excerpts included a provision defining "confidential information" as "information of whatever kind . . . which is disclosed by a representative of one Party . . . to a representative of the other Party . . . in connection with this Agreement which, at the time of disclosure . . . would be understood by the Parties, exercising reasonable business judgment, to be confidential." That provision further stated that "models, prototypes, designs, drawings, materials, samples, coupons, tools, software and equipment supplied by Learjet to [Killick Limited] shall constitute Confidential Information of Learjet and/or Bombardier." Other provisions provided that confidential information "shall be used solely for performance of [the distribution agreements]" and "shall be retained in confidence" by the party receiving the confidential information.

In response to the amended petition, the Killick Parties filed a supplement to their motion to dismiss, arguing that their motion to dismiss should still be granted

party who was damaged for each of the claims, and Bombardier, not Learjet, is the party praying for relief).

5

despite the changes to the original petition. The Killick Parties maintained that in order to adjudicate Bombardier's claims, the trial court would have to determine the Killick Parties' rights to possess and use Bombardier's trade secrets and confidential and proprietary information under the distribution agreements, as well as whether Bombardier had consented to such possession and use. Because the trial court would have to look at the distribution agreements to make those determinations, the Killick Parties argued that the claims against them were factually intertwined with the distribution agreements. But the trial court disagreed and denied the Killick Parties' motion to dismiss. This mandamus proceeding followed.

## Discussion

### A. Mandamus Standard

We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding); *see In re State*, 355 S.W.3d 611, 613 (Tex. 2011) (orig. proceeding).

A trial court abuses its discretion if it fails to correctly analyze or apply the law to the facts. *In re H.E.B. Grocery Co.*, 492 S.W.3d 300, 302–03 (Tex. 2016) (per curiam) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding); *see also State v. Naylor*, 466 S.W.3d 783, 793 (Tex. 2015) (orig. proceeding) ("A writ of mandamus is an extraordinary remedy available 'to correct an action of a trial judge who . . . [violates] a clear duty under the law.'" (quoting *State v. Walker*, 679

6

S.W.2d 484, 485 (Tex. 1984) (orig. proceeding))). We defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

The adequacy of an appellate remedy "has no comprehensive definition," but determining whether a remedy is adequate usually requires a "careful balance of jurisprudential considerations" that "implicate both public and private interests." *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (per curiam) (orig. proceeding) (quoting *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding) ("Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review."). With regard to a trial court's refusal to enforce a forum-selection clause, the Texas Supreme Court has already conducted the balancing test, holding that the failure to enforce a valid forum-selection clause leaves a litigant without an adequate remedy on appeal. *In re Int'l Profit Assocs., Inc.*, 274 S.W.3d 672, 675 (Tex. 2009) (per curiam) (orig. proceeding). Therefore, we need only determine whether the forum-selection clause here applies to Bombardier's claims.

## B.    The Law Regarding Forum-Selection Clauses

Under Texas law, forum-selection clauses "are generally enforceable and should be given full effect." *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 436 (Tex.

2017). A trial court abuses its discretion if it refuses to enforce a forum-selection clause unless the party opposing enforcement clearly shows that (1) the clause is invalid for reasons of fraud or overreaching, (2) enforcement would be unreasonable or unjust, (3) enforcement would contravene a strong public policy of the forum where the suit was brought, or (4) the selected forum would be seriously inconvenient for trial. *Int'l Profit Assocs.*, 274 S.W.3d at 675. "[A] party attempting to show that such a clause should not be enforced bears a heavy burden." *Id.*

Whether a claim falls within a forum-selection clause depends on the parties' intent as expressed in their agreement and a "common-sense examination" of the substantive factual allegations. *Sheldon*, 526 S.W.3d at 437. Legal theories and causes of action are not controlling, and we should avoid slavish adherence to a contract–tort distinction because doing otherwise would allow a litigant to avoid a forum-selection clause with artful pleading. *Id.* The starting point of our inquiry into whether a claim falls within a forum-selection clause is the language of the clause itself. *Id.* Forum-selection clauses, like the one at issue here, that cover claims "arising out of" or "connected with" a contract are especially broad and capable of expansive reach. *See id.* at 437, 439.

Courts should be mindful that a plaintiff could characterize its claim as a tort claim to evade the agreed-upon forum despite essential allegations that are "inextricably enmeshed" or "factually intertwined" with the underlying contract. *Id.* at 440. In such cases, the forum-selection clause should be denied force only if the facts

8

alleged in support of the claim can stand alone, the alleged facts are completely independent of the contract, and the claim could be maintained without reference to the contract. *Id.*

**C.    Application of the Law to the Facts**

While Bombardier and Learjet's original petition included a claim against the Killick Parties for breach of the distribution agreements, that claim, along with certain references to the distribution agreements, was removed in the amended petition.  In the amended petition, Bombardier limited its claims against the Killick Parties to misappropriating its confidential and proprietary information, to violating the Texas Uniform Trade Secrets Act, and to a request for injunctive relief relating to the Killick Parties' possession and use of its trade secrets and confidential and proprietary information.  In their response to the Killick Parties' petition for writ of mandamus, Bombardier and Learjet argue that because Bombardier's claims against the Killick Parties do not rely upon or relate to the distribution agreements, the trial court did not abuse its discretion by denying the Killick Parties' motion to dismiss.  We disagree.

To prove the claims asserted against the Killick Parties in the amended petition, Bombardier must establish that the Killick Parties possessed or used its trade secrets or confidential and proprietary information without its express or implied consent. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(3)(B) ("misappropriation" means "disclosure or use of a trade secret of another without express or implied consent"); *Mesquite Servs., LLC v. Standard E&S, LLC*, No. 07-19-00440-CV, 2020 WL 5540189,

9

at *8 (Tex. App.—Amarillo, Sept. 15, 2020, pet. filed) (listing as a required element of a misappropriation-of-trade-secrets claim that "the [trade] secret [be] utilized by the defendant without the plaintiff's authorization"). Because the distribution agreements expressly granted Killick Limited the right to possess and use certain of Bombardier's trade secrets and confidential and proprietary information—a fact acknowledged in the affidavit of Bombardier's vice president that was attached to its amended pleading—the trier of fact would necessarily have to look at the distribution agreements to determine whether Bombardier had consented to the possession and use of the allegedly misappropriated trade secrets and confidential and proprietary information. Because the trier of fact would have to look at the distribution agreements to make that determination, the claims against the Killick Parties in this lawsuit are connected with and factually intertwined with the distribution agreements and thus cannot stand on their own. *See Sheldon*, 526 S.W.3d at 440.

## D. Who may enforce the forum-selection clause and who may it be enforced against?

Here, because the distribution agreements were signed by Killick Limited and Learjet, certainly Killick Limited may enforce the forum-selection clause against Learjet. *See In re Laibe Corp.*, 307 S.W.3d 314, 317 (Tex. 2010) (orig. proceeding). But a question remains as to whether Killick Limited may enforce the forum-selection clause against Bombardier, a nonsignatory, and whether Killick LLC, a nonsignatory, may enforce the forum-selection clause against Bombardier and Learjet.

10

The Killick Parties argue that the forum-selection clause is enforceable against Bombardier and enforceable by Killick LLC because they are transaction participants to the distribution agreements. In their response, Bombardier and Learjet do not suggest that the transaction-participant theory does not apply to Killick LLC or Bombardier, nor do they suggest that the forum-selection clause should not be enforced against Bombardier or by Killick LLC because they are nonsignatories to the distribution agreements. Nevertheless, because we think that discussion of the transaction-participant theory and its relation to the parties in this proceeding is necessary to our analysis, we will address it.

While the Texas Supreme Court has discussed the transaction-participant theory of enforcement in recent cases, it has not yet either endorsed or rejected the theory. *See Rieder v. Woods*, 603 S.W.3d 86, 99–101 (Tex. 2020); *Sheldon*, 526 S.W.3d at 444–45. In *Sheldon*, the court noted that many other courts, including our own, have held that "transaction participants" may enforce a valid forum-selection clause even if they did not sign the contract containing the forum-selection clause.[4] *Sheldon*, 526 S.W.3d at 444 (discussing theory and collecting cases). The court also observed that "[c]ourts recognizing the validity of this enforcement theory have done so 'solely in the context of a nonsignatory defendant attempting to enforce a forum-selection clause against a signatory plaintiff, who did not want the clause enforced.'" *Id.*

---

[4]Without embracing the theory, the court nevertheless explained the rationale behind it, i.e., that the transaction-participant theory is rooted in foreseeability. *Sheldon*, 526 S.W.3d at 444–45

11

(quoting *Carlile Bancshares, Inc. v. Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658, at *10 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.)).

In *Rieder v. Meeker*, we noted that "although Texas courts have not explicitly expanded the transaction-participant analysis beyond the context of a nonsignatory defendant attempting to enforce a forum-selection clause against a signatory plaintiff, federal courts and other states have not so limited the doctrine." 587 S.W.3d 32, 54 (Tex. App.—Fort Worth 2018), *rev'd on other grounds*, 603 S.W.3d at 89, 100–02; *see, e.g.*, *SSAB Ala., Inc. v. Kem-Bonds, Inc.*, CV 17-0175-WS-C, 2017 WL 6345809, at *3 n.3 (S.D. Ala. Dec. 12, 2017) (order) (explaining that when "the alleged conduct of the nonparties is closely related to the contractual relationship, a range of transaction participants, parties and nonparties, should benefit from and be subject to forum selection clauses"). In our opinion in *Rieder*, we went on to hold that a nonsignatory could enforce a forum-selection clause against another nonsignatory under the transaction-participant theory when such enforcement was foreseeable.[5] 587 S.W.3d at 55–56.

Applying our own precedent, we must decide here whether it was foreseeable that the forum-selection clause could be enforced against Bombardier by Killick Limited and whether it was foreseeable that the forum-selection clause could be

---

[5]Our *Rieder* opinion was ultimately reversed by the Texas Supreme Court, which held that enforcement of the forum-selection clause on the nonsignatory was not foreseeable given the facts of the case. 603 S.W.3d at 100–01.

12

enforced by Killick LLC against Bombardier and Learjet.[6]  As it relates to the enforcement against Bombardier by Killick Limited, the record reflects that Bombardier is Learjet's parent company.  The record also contains a declaration from one of the Individual Defendants stating that Bombardier "led and controlled all of the negotiations of the [d]istribution [a]greements with Killick [Limited]," that Learjet signed the distribution agreements "only upon express approval from [Bombardier]," and that Bombardier insisted that the forum-selection clause be included in the distribution agreements.  Moreover, Bombardier was referenced throughout the distribution agreements and was granted certain rights and benefits under the agreements.  For example, Section 2.2 of one of the distribution agreements provided that Killick Limited could not sell certain defined parts without Bombardier's prior written consent, and Section 11.1 of that agreement required Killick Limited to maintain certain insurance "without prejudice to its liability to Bombardier."  Both distribution agreements acknowledged Killick Limited's right to possess and use certain of Bombardier's trade secrets and confidential information and provided certain restrictions on the possession and use of those trade secrets and confidential

---

[6]In their petition, the Killick Parties also discuss the "closely related" theory, which they say is "similar and factually overlapping" to the transaction-participant theory.  We will follow the Texas Supreme Court's lead and treat these two theories as one overlapping theory.  *See Rieder*, 603 S.W.3d at 98 ("Because of the overlap and similarity between the two enforcement theories, we refer to them collectively as the 'transaction-participant theory.'").

information. Both agreements also prohibited Killick Limited from disparaging Bombardier's reputation, and both required Killick Limited to send notices under the agreements to Bombardier. According to the declaration of one of the Individual Defendants, Bombardier was the party that added the references to Bombardier contained in the distribution agreements. Based on the totality of that evidence, we hold that it was foreseeable that the forum-selection clause could be enforced by Killick Limited against Bombardier.[7] *See Sheldon*, 526 S.W.3d at 444–45.

As it relates to the enforcement of the forum-selection clause by Killick LLC against Bombardier and Learjet, the record reflects that Killick LLC and Killick Limited are both subsidiaries of and controlled by a different Killick entity and that Killick LLC is an "affiliate" of Killick Limited as that term is defined in the distribution agreements.[8] The record further reflects that the distribution agreements require Killick Limited (an Irish entity) to maintain a place of business within the United States to enable it to perform the distribution agreements in the United States and that Killick LLC is the entity fulfilling that obligation. As stated in an affidavit by

---

[7]In their petition, the Killick Parties also contend that Killick Limited may enforce the forum-selection clause against Bombardier because Bombardier is a third-party beneficiary to the distribution agreements. Because we have determined that Killick Limited may enforce the forum-selection clause against Bombardier under the transaction-participant theory, we need not address this alternative enforcement theory. *See* Tex. R. App. P. 47.1.

[8]The distribution agreements define an "affiliate" as "with respect to any person or entity, any other person or entity directly or indirectly controlling, controlled by or under common control with such person or entity."

14

Killick LLC's president, Killick LLC "provides all logistics for performance of the [d]istribution [a]greements within the United States" and with respect to purchases made under the distribution agreements, Killick LLC places orders on behalf of Killick Limited with Bombardier, and the parts ordered are shipped to Killick LLC's warehouse. Additionally, one of the distribution agreements calls for notices under the agreement to be sent to both Killick Limited and Killick LLC. Finally, the record reflects that Bombardier and Learjet's pleadings offer little, if any, distinction between Killick Limited and Killick LLC: the amended petition collectively refers to both entities as "Killick" in the first paragraph of the petition, and the facts and claims mentioned in the petition do not distinguish between Killick Limited and Killick LLC but simply refer to "Killick." Based on the totality of that evidence, we hold that it was foreseeable that the forum-selection clause could be enforced by Killick LLC against Bombardier and Learjet.[9] *See Sheldon*, 526 S.W.3d at 444–45; *Rieder*, 587 S.W.3d at 54.

---

[9]In their petition, the Killick Parties also briefly claim that the forum-selection clause may be enforced by Killick LLC against Bombardier and Learjet because of the "direct benefits estoppel" theory. Again, because we have determined that Killick LLC may enforce the forum-selection clause against Bombardier and Learjet under the transaction-participant theory, we need not address any alternative enforcement theory. *See* Tex. R. App. P. 47.1.

**Conclusion**

Having determined that the forum-selection clause is enforceable by both Killick Limited and Killick LLC against both Bombardier and Learjet and having determined that the claims asserted against the Killick Parties in this lawsuit are factually intertwined with the distribution agreements and cannot stand on their own, we hold that the trial court abused its discretion by denying the Killick Parties' motion to dismiss. And because the Texas Supreme Court has instructed us that "no adequate remedy by appeal [exists] when a trial court abuses its discretion by refusing to enforce a valid forum-selection clause that covers the dispute," *Int'l Profit Assocs.*, 274 S.W.3d at 675, we hold that the Killick Parties lack an adequate remedy by appeal.[10]

Because the trial court clearly abused its discretion and because the Killick Parties have no adequate remedy by appeal, the Killick Parties are entitled to mandamus relief. Accordingly, we conditionally grant a writ of mandamus and direct the trial court to vacate its order denying the Killick Parties' motion to dismiss, and we direct the trial court to enter an order dismissing the claims brought against the Killick Parties. *See* Tex. R. App. P. 52.8(c). Our writ will issue only if the trial court fails to comply.

---

[10]In their response, Bombardier and Learjet do not suggest that the Killick Parties have an adequate remedy by appeal.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered:  December 23, 2020